# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ROGER N. JONES,

    *Plaintiff*,

vs.

Case No. 19-01124-EFM

FAY SERVICING, LLC,

    *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Fay Servicing, LLC's ("Fay") Motion to Dismiss for Failure to State a Claim (Doc. 8). Jones alleges that Fay violated the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Kansas Consumer Protection Act ("KCPA") in its servicing of his mortgage loan. Fay now moves the Court to dismiss all counts, arguing that Jones has failed to state a claim for relief. For the following reasons, the Court grants Fay's motion to dismiss.

# I. Factual and Procedural Background[1]

In 1993, Jones obtained a loan secured by a mortgage against his house located in Viola, Kansas. Fay—a Delaware LLC authorized to do business in Kansas—began servicing Jones' mortgage on July 1, 2017, at which time Jones was current on his loan obligations. Beginning with his payment due in July 2017, Jones paid amounts in addition to the $542.74 mortgage payment owed to Fay. Jones asked that Fay apply his additional payments to the principal balance on the mortgage loan. Fay held these additional payments in "suspense" before applying them to the loan as directed. Jones continued to make additional payments on his mortgage in August, September, and December 2017, as well as January, February, March, April, May, June, and July 2018. The total amount of Jones' additional payments equaled $2,000. By holding Jones' additional payments in "suspense" rather than applying them to the loan on the date it received them, Fay caused Jones to accrue greater interest expense than he otherwise would have.

Fay sent Jones a statement in May 2018 that indicated he owed $13,339.56 in "Total Fee Charges" in addition to his regular mortgage payment. This statement contained no explanation of what the fees resulted from. Jones received no other separate explanation of these fees. Jones contacted Fay to inquire about the fees but received no further clarification or explanation. Fay continued to send Jones statements attempting to collect the "Total Fee Charges," including them on his mortgage statements from June 2018 through January 2019.

On December 3, 2018, Jones' counsel sent Fay a qualified written request ("QWR") notifying Fay of Jones' disagreement regarding his additional payments being held in suspense, Fay's purchase of "Forced Place Insurance," and Fay's lack of explanation concerning the

---

[1] The facts are taken from Jones' complaint and are considered true for the purposes of this motion.

$13,339.56 in fees. Fay replied to Jones directly, informing him that it planned to respond to his QWR within 30 days. On December 20, Jones' counsel sent Fay another letter asking Fay to correct the aforementioned disagreements with Jones' account. Fay did not respond to this letter, but on January 24, 2019, it sent another letter directly to Jones indicating that it needed more time to research the alleged errors. On February 25, Fay directly sent Jones a letter alleging that he was delinquent on his mortgage payments. Three days later, on February 28, Fay directly sent Jones its response to the QWR from December 3. Jones received both the delinquency notice and response to the QWR on March 3.

In its response to Jones' QWR, Fay addressed the following concerns. It confirmed that it investigated the source of the $13,339.56 in fees and could not determine where the original servicer had derived that amount. As a result, Fay waived those fees in their entirety. Fay also explained its reasoning for buying Forced Place Insurance, indicating that it had warned Jones twice of the need for hazard insurance coverage with no response. However, after subsequently learning that Jones purchased adequate hazard insurance, Fay canceled the Forced Place Insurance, received a full refund for the premiums paid, and charged Jones no fees for those transactions.

Finally, Fay explained its process of accepting un-earmarked additional payments. It applied Jones' additional payments to his principal only if he directly specified that arrangement. Otherwise, Fay held additional payments in a suspense account until the suspense account accumulated enough funds to cover the cost of a monthly payment, at which time Fay applied those monies to any accrued interest, then to principal. Fay explained its position that Jones directed only the January and May 2018 additional payments to apply to the principal, whereas the February to April 2018 additional payments lacked the necessary instructions and were therefore

held in suspense. Fay also noted that it received additional payments in January 2019, which it applied to Jones' principal as directed.

Jones filed this lawsuit on May 10, 2019, alleging that Fay violated the FDCPA (Counts I, II, and III), RESPA (Counts IV and V), and KCPA (Counts VI and VII) in its servicing of Jones' mortgage.[2] Fay now moves to dismiss Jones' complaint for failure to state a claim. Jones additionally asks for leave to amend his complaint if the Court grants Fay's motion to dismiss.

## II. Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[4] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[6] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7] Viewing the complaint in this manner, the court must decide whether the

---

[2] The Court has jurisdiction over this case under 28 U.S.C. §§ 1331 & 1367(a).

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Iqbal*, 556 U.S. at 678–79.

plaintiff's allegations give rise to more than speculative possibilities.[8] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[9]

### III. Analysis

**A.  Counts I–III: FDCPA**

In his first three claims, Jones alleges that Fay violated the FDCPA by communicating directly with Jones rather than Jones' counsel, by making false representations concerning the $13,339.56 in fees, and by making false representations regarding Jones' loan delinquency. Fay asks the Court to dismiss these claims, arguing that the FDCPA does not apply to Fay because it is not a "debt collector" under the act.

The FDCPA was enacted to eliminate abusive debt collection practices.[10] To do so, the FDCPA regulates interactions between consumer debtors and "debt collectors."[11] The FDCPA does not "prohibit a debt collector from merely attempting to collect on a debt. Nor are threats to take legal action or to report a debtor to credit agencies actionable, unless the action threatened cannot legally be taken, is not intended to be taken, or involves the communication of false information."[12]

---

[8] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[10] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 577 (2010).

[11] *Id.*

[12] *Lacey v. Ocwen Loan Servicing, LLC*, 2014 WL 2885471, at *2 (D. Kan. 2014) (citing *Whayne v. United States Dep't of Educ.*, 915 F. Supp. 1143, 1145 (D. Kan. 1996)).

To present a claim under the FDCPA, the claimant must show that the monetary obligation in dispute is a "debt" and that the entity collecting the debt is a "debt collector."[13] The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[14] The statute creates multiple exceptions for the term "debt collector."[15] Under the FDCPA, the "term 'debt collector' . . . does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person . . . ."[16] The Tenth Circuit has confirmed that this exception applies to mortgage loan servicers.[17]

A servicing company is subject to the FDCPA, however, if the loan was in default at the time the servicer acquired it.[18] The FDCPA does not define the term "default."[19] Without clarity from Congress, the determination of whether a debt is in default is to be made by the court on a

---

[13] *Mondonedo v. Sallie Mae Inc.*, 2009 WL 801784, at *3 (D. Kan. 2009); *see also* 15 U.S.C. § 1692.

[14] 15 U.S.C. § 1692a(6).

[15] *See id.*

[16] 15 U.S.C. § 1692a(6)(F)(iii).

[17] *Obduskey v. Wells Fargo*, 879 F.3d 1216, 1219 (10th Cir. 2018), *aff'd sub nom. Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019).

[18] *Mondonedo,* 2009 WL 801784, at *3.

[19] *Head v Ocwen Loan Servicing, LLC,* 2015 WL 4276148, at *4 (D. Kan. 2015) (citing *Simmons v. Med–I–Claims*, 2007 WL 486879, at *7 (C.D. Ill. 2007) ("Unfortunately, the FDCPA does not define so key a term as 'default.' . . . [W]here there is no relevant contractual provision . . . between the debtor and the creditor nor any governing regulation, courts have struggled to establish when a debt is in default for purposes of . . . determining whether a party is a debt collector under the FDCPA.")).

case-by-case basis.[20] Any applicable contractual or regulatory language that defines a point of default may be instructive.[21] But language in a servicing company's notice that states that an entity is a debt collector or is collecting the recipient's debt is relevant—but not sufficient—evidence that the servicing company is a "debt collector" subject to the FDCPA.[22]

The Court concludes that Jones has failed to state a facially plausible claim that Fay is a "debt collector" governed by the FDCPA. Jones argues that the mortgage was in default at the time Fay acquired it and that Fay treated it as such. The facts do no support this conclusion though. First, contrary to his present argument concerning this motion, Jones admitted in his complaint that the mortgage was not in default at the time Fay became the servicer. Second, Fay sent Jones no notice of default after acquiring the mortgage. In fact, in the oldest mortgage statement Jones attached as an exhibit to his complaint (dated November 25, 2017), Fay clearly indicated that Jones was current on his loan obligations. This statement—which is dated well after Fay acquired the mortgage—lists both "Overdue Payments" and "Total Fees Charged" as $0.00. This statement also includes Jones' payment history for the preceding three months, none of which list additional charges or overdue payments. Jones' complaint and attached exhibits show that the first time Fay declared Jones to be overdue on his payments was on February 25, 2019.

Jones further argues that Fay is a "debt collector" under the FDCPA because it calls itself such in boilerplate language at the bottom of many pieces of correspondence. Although Fay does include disclaimers that "[it] is a debt collector, and any information you provide will be used for

---

[20] *Head*, 2015 WL 4276148, at *4 (citing *Church v. Accretive Health, Inc.*, 2014 WL 7184340, at *3 (S.D. Ala. 2014) (quoting *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 440 (E.D.N.Y. 2013))).

[21] *Id.*

[22] *See Maynard v. Cannon*, 401 F. App'x 389, 395 (10th Cir. 2010).

that purpose. . ." courts have held that such boilerplate language does not estop defendants from denying they are debt collectors as specifically defined by the FDCPA.[23] Rather, the Court should "consider the disclaimer in the totality of facts of each particular case."[24] Here, all of the above-mentioned facts pled in the complaint and its attachments thoroughly indicate that Jones' mortgage was not in default at the time Fay acquired it. Therefore, as a loan servicer that acquired a loan not in default, Fay is not subject to the FDCPA. As such, the Court grants Fay's motion to dismiss Counts I, II, and III.

**B.     Counts IV & V: RESPA**

Jones alleges in Count IV that Fay violated RESPA by failing to respond to his QWR within the appropriate time period. Fay moves to dismiss this count, arguing that Jones has failed to allege actual damages resulting from the delayed response to the QWR.

Congress enacted RESPA "to regulate real estate settlement processes" including loan servicing.[25] It requires mortgage loan servicers to timely respond to a borrower's QWR by acknowledging receipt of the QWR, conducting an investigation, and then providing a written statement of the reasons it believes its accounting is correct, or alternatively providing the information requested by the borrower.[26] If the loan servicer fails to comply with these statutory mandates, the borrower may recover actual damages resulting from the failure.[27] In this case, Fay

---

[23] *Hooks v. Forman Holt Eliades & Ravin LLC*, 2015 WL 5333513, at *12 (S.D.N.Y. 2015) ("The mere use of a 'debt collector' disclaimer [does not] automatically transform[] a person into a debt collector for purposes of the FDCPA.") (citing *Alibrandi v. Fin. Outsourcing Svs., Inc.*, 333 F.3d 82, 87 (2d Cir. 2003)).

[24] *Id*; *see also Head*, 2015 WL 4276148, at *4.

[25] *Berneike v. CitiMortgage, Inc*., 708 F.3d 1141, 1145, 1148 (10th Cir. 2013).

[26] 12 U.S.C. § 2605(e)(1)(A), (2).

[27] 12 U.S.C. § 2605(f).

had a total of 45 days (excluding weekends and holidays) to acknowledge receipt of Jones' QWR, investigate its allegations, and substantively respond.[28]

"RESPA provides only for actual damages stemming from a violation of 'any provision' of § 2605 and statutory damages arising from a pattern or practice of violations."[29] "Thus, to survive a motion to dismiss under Rule 12(b)(6), a RESPA plaintiff must allege actual damages arising from a RESPA violation," or a pattern or practice of violations.[30] "[L]itigation expenses and attorney's fees can't be actual damages because RESPA separately allows successful plaintiffs to recover such fees and expenses in addition to actual damages."[31]

Jones' allegations—which the Court accepts as true for the purposes of this motion—are that Fay failed to timely respond to his QWR. Fay was required to respond to the QWR no later than February 15, 2019. It failed to meet this deadline, instead responding on February 28. Jones claims that he suffered actual damages as a result of this 13-day delay. However, he fails to allege any facts indicating what those damages are. Rather, in his response, Jones argues that his damages included emotional distress and attorney fees.

Importantly, Jones alleges no actual damages directly stemming from Fay's delayed response to the QWR—the RESPA violation asserted in Jones' claim. Rather, in his response to

---

[28] 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e)(3)(i)(C), (ii).

[29] *Morgan v. Carrington Mortg. Servs.*, 719 F. App'x 735, 744 (10th Cir. 2017) (quoting 12 U.S.C. § 2605(f)(1)(A-B)).

[30] *Id.*

[31] *Fowler v. Bank of Am., Corp.*, 747 F. App'x 666, 670 (10th Cir. 2018) (internal citations, quotation, and empasis omitted); *see also Morgan*, 719 F. App'x at 744 (affirming dismissal, stating "[Plaintiff] made only the conclusory allegation that she suffered 'damages for economic harm, pain and suffering, severe stress and emotional distress.' These are legal labels, not factual allegations."); *Ogden v. PNC Bank*, 599 F. App'x 331, 332 (10th Cir. 2015).

Fay's motion, Jones notes that, in regard to his KCPA claims, he alleges that he suffered emotional distress from Fay's attempts to collect $13,339.56 in unexplained fees. However, the relevant inquiry here is not whether Jones suffered emotional distress *at any time*, but whether he suffered emotional distress or other actual damages *stemming from* Fay's delay in responding to the QWR. He alleges no such damages. Furthermore, Jones fails to allege that Fay has a pattern or practice of violating RESPA. Jones only mentions a single occurrence of Fay's untimely response to the QWR. The Court does not consider one untimely response a pattern or practice. Therefore, the Court concludes that Jones has failed to allege actual damages stemming from Fay's 13-day delay in responding to the QWR.

In Count IV, Jones argues that he can recover attorney fees associated with Fay's delay in responding to the QWR. This argument contradicts established Tenth Circuit law.[32] Under RESPA, plaintiffs can only recover attorney fees in addition to actual damages. In the absence of actual damages resulting from Fay's delay, Jones cannot recover attorney fees. As a result, the Court concludes that Jones has failed to allege a facially plausible claim for actual damages resulting from Fay's delayed response to the QWR and cannot otherwise independently recover attorney fees.

In Count V, Jones alleges that Fay violated RESPA by failing to properly credit Jones' mortgage loan account as of the date additional payments were received. He alleges that this caused him to incur unnecessary interest expense on the loan than he otherwise would have had his additional payments been applied to the mortgage loan principal. Fay argues that RESPA itself does not substantively require it to credit mortgage accounts in the manner Jones' advocates.

---

[32] *See Fowler,* 747 F. App'x at 670.

"RESPA does not require the servicer to provide information the borrower believes to be accurate."[33] Instead, RESPA simply "requires the servicer to provide 'a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer' and the information requested by the borrower."[34]

Jones disputes the reasons and information provided in Fay's response to the QWR. But in order to comply with RESPA, Fay need not provide Jones with reasons and information that he finds agreeable, but rather "after conducting an investigation" Fay must give "reasons for which [Fay] believes [Jones' account] is correct as determined by [Fay]," as well as any "information requested by [Jones] . . ."[35] In Count V, Jones is asking the Court to acknowledge a cause of action that does not exist in RESPA. Even if the Court liberally construes Jones' complaint to assert a proper claim under RESPA—for instance, alleging that Fay failed to investigate Jones' account or provide the requested reasons or information—the alleged facts would not support that claim. Jones attached Fay's response to the QWR to his complaint, and that response clearly indicated that Fay investigated Jones' claims and provided meaningful reasons for its actions. While Jones may disagree with those actions, it is not up to this Court to fashion a remedy for that disagreement—certainly not under RESPA as Jones claims. As a result, the Court dismisses Count V for failure to state a claim upon which relief can be granted.

---

[33] *Brunson v. Provident Funding Assocs.*, 608 F. App'x 602, 612 (10th Cir. 2015).

[34] *Id.* (citing 12 U.S.C. § 2605(e)(2)(B), (C)).

[35] 12 U.S.C. § 2605(e)(2)(B), (C).

## C. Counts VI & VII: KCPA

Jones' final two claims allege that Fay engaged in deceptive practices in violation of the KCPA by "attempt[ing] to collect $13,339.56 in fees that it was admittedly unable to validate." The KCPA prohibits suppliers from engaging in deceptive and unconscionable acts and practices in connection with "consumer transaction[s]."[36] For the period of time relevant to the facts pled in this case, the KCPA defined "Supplier" as:

> [A] manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer. *Supplier does not include any bank, trust company or lending institution which is subject to state or federal regulation with regard to disposition of repossessed collateral by such bank, trust company or lending institution.*[37]

Effective July 1, 2019, the Kansas legislature amended the definition of "supplier" to delete the sentence italicized above—commonly referred to as the "regulated entity exclusion."

"The general rule of statutory construction is that a statute will operate prospectively unless its language clearly indicates that the legislature intended that it operate retrospectively."[38] However, courts modify the general rule of statutory construction where the statutory change is "merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties."[39] "[W]hen a change of law merely affects the remedy or law of procedure, all rights

---

[36] K.S.A. §§ 50-626, 50-627.

[37] K.S.A. § 50-624(l) (until June 30, 2019) (emphasis added).

[38] *Halley v. Barnabe*, 271 Kan. 652, 24 P.3d 140, 144 (2001) (citing *Davis v. Hughes*, 229 Kan. 91, 622 P.2d 641, 650 (1981)).

[39] *Davis*, 922 P.2d at 650.

of action will be enforced under the new procedure without regard to whether or not the suit has been instituted, unless there is a savings clause as to existing litigation."[40]

Jones argues that the Court should apply the amendment retroactively to encompass the facts of this case. The Court declines to do so. The legislature did not clearly indicate that the July 2019 amendments should operate retroactively. In fact, the relevant Kansas Session Laws, as well as at least one court, has stated that the amendment is prospective only.[41] Furthermore, the 2019 amendments to the KCPA did not modify either the remedial or procedural provisions of the statute.[42] As a result, the Court concludes that the KCPA definition of "supplier" that governs the facts of this case is the one that was in effect prior to July 2019.

In its motion to dismiss, Fay argues that it is not a "supplier" under the pre-amendment definition because it meets the regulated entity exclusion as a "lending institution." As a preliminary matter, the Court takes judicial notice of the public records indicating that Fay is licensed and regulated by the Kansas Office of the State Bank Commissioner.[43] Fay argues that this proves that it is a "lending institution which is subject to state or federal regulation" and therefore not a "supplier" under the KCPA.

Jones disagrees, arguing that Fay's position as a mortgage loan servicer does not fit the remaining clause in the pre-amendment statutory definition of "supplier." The relevant portion of the definition reads: "Supplier does not include any bank, trust company or lending institution

---

[40] *Id.*

[41] 2019 Kan. Laws Ch. 66, § 17; *see also Schneider v. CitiMortgage, Inc.*, No. 2019 WL 3731909, at *1 (D. Kan. 2019).

[42] *See* K.S.A. §§ 50-634, 50-636, & 50-638 (July 2019).

[43] A court can "take judicial notice of its own files and records, as well as facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (internal citations omitted).

which is subject to state or federal regulation *with regard to disposition of repossessed collateral by such bank, trust company or lending institution.*"[44] Fay admittedly is not subject to state regulation with regard to the disposition of repossessed collateral in Jones' particular case. However, multiple courts in this jurisdiction and others have interpreted the pre-amendment definition to include banks that are regulated by the state, regardless of whether the particular case actually involves a disposition of repossessed collateral.[45] This Court agrees with the overwhelming authority on this issue.

Furthermore, while Fay is not a "bank" like the defendants in the cited persuasive authority, Fay is a "lending institution" under the pre-amendment definition of supplier. The KCPA does not specifically define "lending institution," but defines "lender" as "a bank, savings and loan association, savings bank, credit union, finance company, mortgage bank, mortgage broker and any affiliate."[46] The final modifier "and any affiliate" sufficiently expands "finance company, mortgage bank, mortgage broker" to include a mortgage service company. Therefore, as a mortgage service company, Fay meets the definition of lending institution. Since Fay is also licensed and regulated by the Kansas Office of the State Bank Commissioner, it therefore meets the regulated entity exclusion under the KCPA as a "lending institution which is subject to state or federal regulation." This means that Fay is not a "supplier" under the KCPA. As a result, the Court grants Fay's motion to dismiss Counts VI and VII.

---

[44] K.S.A. § 50-624(l) (until June 30, 2019) (emphasis added).

[45] *In re Larkin*, 553 B.R. 428, 444 (Bankr. D. Kan. 2016) ("In every instance where a bank's status as 'supplier' under the KCPA was directly before it, the United States District Courts have held that regulated banks are excluded from the definition, regardless of whether the case actually involves a disposition of repossessed collateral."); *see also Kalebaugh v. Cohen, McNelie & Pappas P.C.*, 76 F. Supp. 3d 1251, 1260 (D. Kan. 2015); *Kastner v. Intrust Bank*, 2011 WL 721483, at *3 (D. Kan. 2011).

[46] K.S.A. § 50-624(f).

**D.     Jones' Motion for Leave to Amend the Complaint**

Jones additionally asks the Court for leave to amend his complaint "to cure any claim" the Court dismissed. A "party may amend its pleading once as a matter of course" within 21 days after serving it, or within 21 days after service of a responsive pleading or a Rule 12 motion.[47] Thereafter, "a party may amend its pleadings only with the opposing party's written consent or the court's leave."[48] Under Rule 15(a), leave to amend a complaint is freely given when justice so requires. Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.' "[49] Courts may, however, deny leave to amend based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[50] "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason."[51] It is within the Court's sound discretion whether to allow a proposed amendment after the permissive period.[52]

The Court denies Jones's motion for leave to amend Counts I, II, III, V, VI, and VII. No additional factual allegations would correct the pleadings to the extent that Fay would be subject

---

[47] Fed. R. Civ. P. 15(a)(1).

[48] Fed. R. Civ. P. 15(a)(2).

[49] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[50] *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[51] *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (citing *Jefferson Cty. Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 858–59 (10th Cir. 1999)).

[52] *Foman*, 371 U.S. at 182; *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010).

to either the FDCPA or KCPA.  Because an amendment pertaining to those counts would be futile, the Court does not grant Jones leave to amend Counts I, II, III, VI, or VII.  In Count V Jones asserts a cause of action that does not exist under RESPA.  Any amendment to the allegations under that claim would not change the nature of the law pertaining to RESPA actions.  Therefore, the Court denies Jones leave to amend Count V.

Lastly, the Court grants Jones leave to amend Count IV of his complaint to include factual allegations of actual damages.  Jones must amend the complaint within 21 days of this Order or else the Court will close the case.  To reiterate, Jones must assert discrete allegations of actual damages resulting from Fay's delay in responding to the QWR.

**IT IS THEREFORE ORDERED** that Defendant Fay Servicing, LLC's Motion to Dismiss for Failure to State a Claim (Doc. 8) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

Dated this 5th day of February, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE